All rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court is back in session, pursuant to adjournment. The Honorable Donald C. Hudson, presiding. All right, good morning. Please be seated. Your Honor, this is the third case of the morning, called 213-042, here in Shilvock-Cinefro v. Illinois Department of Children and Family Services. On behalf of the appellant, Mrs. Rebecca M. Lee. On behalf of the appellee, Sharon P. Broussard. All right, thank you. Counsel, I do have to make a disclosure here for the record. Justice Robert Spence, who is the third member of our appellate panel on this case, could not be here this morning. We will, of course, be proceeding. He will be listening to the arguments on the audio tape. Obviously, he has to produce access to the record. So he'll be a fully participating member of the panel in arriving at a decision in this case. So with those thoughts in mind, Ms. Lee, you may proceed. Good morning. May it please the Court, Counsel. Karen C. Frost submitted and went to administrative hearing on a request to expunge a DCFS-indicated finding, which was denied by the Department. The denial was against the manifest weight of the evidence which was adduced at the hearing, and clearly erroneous and should be reversed. Because an analysis of an allegation of abuse rests on the specific facts of each individual case, I'll briefly summarize the facts. I think we pretty much know the facts. I mean, in taking them in context, one of the things I'd like you to hone in on, and obviously I'll be asking opposing counsel, is the administrative law judge obviously found that the child had been restrained, and the judge felt that it was unreasonable restriction of the minor's movements, but the administrative judge did not address whether or not there was a substantial risk of physical injury caused by the restraint in tying it into the act. So does the fact that the child has been restrained end the inquiry, or should the administrative law judge also direct the substantial risk part as part of the finding? What's your take on that? The latter is certainly our position and was the primary basis of our appeal. At the original administrative hearing, we submitted that the inquiry does not end at whether the department has proven by preponderance of the evidence that there was a restriction on the mobility of the child and even the decision that it was an unreasonable restriction, but that any allegation of harm, including Allegation 14, also requires an analysis of whether abuse as defined in the act has occurred. And I would submit to this court that the administrative agency not only made a finding that there was abuse, or not only didn't make a finding that there was abuse, but didn't feel that there was a need to make that finding. And your position is even if such a finding was made, that that finding would have been against the manifesto of the evidence? Yes. It should be reversed anyway. So a remand is not necessary. You're asking for an outright reversal, correct? We're asking for an outright reversal. If it can be implied in the decision that they've made a finding of abuse, then yes, we would submit that that, too, was against the manifesto of the evidence. So you're not asking for a remand? We're not asking for a remand. So we decide that we find there's error here, which is the ultimate issue. So that's the main thrust of your arguments, that there should have been a finding on the abuse aspect, the substantial risk in the decision, and it's flawed because it wasn't. That is correct. It's our position. The allegation of harm at issue in this case is 14, tying or close confinement. Allegation 14 is an allegation of abuse. Abuse is defined in the Abused and Neglected Child and Reporting Act, and we believe that the department, to meet its burden, had not only to prove that there was a violation of Allegation 14, but that there was abuse. And an abused child is one whose parents inflict or create injury or substantial risk of injury. That requires a likelihood of injury. Well, what about this part, though? So, I mean, obviously we have to consider arguments in fairness to both sides. And I'm exploring that in my mind as I'm reading the briefs and reading everything else. Could the substantial risk have come from the fact that there could have been an accident? Does that tie into it at all? I think that that was explored in the examination of the appellant at the administrative hearing. I don't have the citation to the record with me, but I know that in my examination. I mean, that's a fire or something. Is that a plausible basis to uphold the decision? I think that that's at least to the allegation that counsel makes in the response brief, that there are all of these hypotheticals that could have happened that are a substantial risk. I don't believe that outrageous hypotheticals is the standard. The standard is actual injury or likely injury, not just the outside. The glass could have flown out of a window of some building and hit them, and you're saying so. I'm saying that that could happen in any car ride that anyone takes at any given time. The standard or not. Exactly. The use of the term substantial risk, that implies a fair reading of it, implies that there has to be something that is likely to occur, not some speculation. That's correct. And it's our position, actually, within the statutory definition of abuse, likely to cause death, disfigurement, impairment of physical or emotional health, or loss or impairment of bodily function. There is a likeliness or a likelihood standard, and that was not by any stretch of the imagination met in this case. Did anybody ask the administrative law judge on either side for some findings on this issue? How did this whole aspect of this finding on the abuse get glossed over? At the time of the original administrative hearing, I set forth certain case law, including Karunka and Walk, which are cited in both briefs, and the department's attorney took the position that Allegation 14 did not require such a finding, that a finding of unreasonableness was sufficient. There was no requirement that abuse be proven or found. And the judge went along with that suggestion. I would submit that the judge, in her written decision, glossed over the issue. She doesn't address that it needed to be addressed, nor does she make a specific finding. In a way. Correct. Correct. And it is for that reason that we find error in the decision. Additionally, the department's determination that the appellant's actions amounted to an unreasonable restriction on mobility, we submit is clearly erroneous. Allegation 14 sets forth certain examples of conduct which are violative. Those examples, it is well settled, are not per se violations. The department must prove that the conduct amounts to an unreasonable restriction based on the totality of the circumstances of the particular case. Here, the restriction was not unreasonable. Given the totality of the circumstances, a child who has recently been adopted, who has been suffering a series of violent episodes, who is, by the appellant's testimony, involved in the most serious episode of behavior disorder that she has seen. She's lashing out. She's screaming. She's flailing, scratching herself, biting, spitting. She's a threat to herself. She's a threat to the appellant's other children. She's a threat to the appellant. How many children were in the van? I believe there were three other children in the van at the time. Is there a concern, too, that she might open the doors and jump out of the van? There is. There is a past history of that. One of the findings, a fact of the administrative law judge, is that there was a history of opening the car door during car rides. So it's our position that the restraint, though unorthodox certainly, was not unreasonable given these specific circumstances. And we believe that this case is not unlike WAC, the Fourth District case that involved the caging, if you will, of two foster children. It's an unorthodox way of addressing the situation, but based on the totality of the circumstances in the specific case, it's not unreasonable. The agency's denial of the appellant's request to expunge was against the manifest weight of the evidence, was, we believe, error that is subject to perhaps de novo review, that they made no finding of abuse whatsoever, and the finding that the restriction was unreasonable was clearly erroneous, and for those reasons we ask that this court reverse. Thank you. Thank you. Thank you. Good morning, Your Honors. Good morning, Ms. Persaud. Counsel, on behalf of the Department of Children and Family Services, we ask that the court affirm the department's decision as not against the manifest weight of the evidence or clearly erroneous as to its ultimate determination. The director adopted the ALJ's decision, and at that point it becomes the decision of the director, and it's based on taking into consideration the law, so I would submit that it does address whether or not there was, this act is, meets the time, close confinement allegation of abuse given. Can you hold on to the issue of the fact that the decision didn't address the substantial risk, the abuse language in the act? It seemed to hinge on whether or not there was an unreasonable restriction of movement, unreasonable restraint. How do you respond to our argument? There was nothing said about whether or not this really was an act of abuse specifically. The argument is that under the ANCRA, the Abuse and Neglect Child Reporting Act, if there is, which defines it as risk of physical harm, mental, emotional health, or substantial. And likely to cause. Right. Yes. I'm sorry. Both substantial and likely to cause. Yes. There's two different ways that this can be met. The allegations that come in when a report is made of suspected abuse gets reported and classified as some sort of, here's the classification of the type of abuse that's been alleged. So now we're looking at the classification of this. And what the classification here is tie and close confinement. And it sets out what that is. So if you meet that, and they're saying, yes, this meets, this is tie and close confinement, it meets that classification of abuse. So I. So your position is there's no additional need for the Administrative Projects to address the substantial risk, likelihood of harm? Well, I think that for an agency, this is the Director's. And if there's additional findings of fact that need to be made, I would say that it would need to be remanded because that is a finding of fact, and the agency should make that determination, the Director. Procedurally, drawing on my own experience, the report is made. We're not talking about whether or not a report was required. We're talking about whether or not the claim that ultimately any finding of abuse could not be substantiated, which is the purpose of the hearing, to establish that the finding should be, or the report should be expunged because ultimately it's determined that there was no abuse. Isn't that really what is at issue here? It's whether or not by a preponderance of the evidence on the administrative hearing, whether it's more likely than not that the abuse just took place. That there was abuse. Right. Right. And I think that there was a determination, you know, through the hearing, first there's the allegation, and then. What was the abuse? The abuse is when you tie in a. We know the confinement. Right. That's the first step. That's the report is made, Factor 14. But where is the definition of abuse met here? Under the act. Under the act, you can have an emotional harm. That's abuse. You can, yes. Was there actual evidence of that? Oh, I think that, yes, there was. This child was emotionally distraught, and that's why she was restrained in the first place, because she was acting out, harming herself, unsafe to transport unless she was restrained. That was the plaintiff's position, correct? That is the plaintiff's position. But there is then. What was the substantial risk or risk that there was likely to be death of great bodily harm? Or emotional harm? Or emotional harm. There's just being so completely immobilized from, I mean, every part of her body was immobilized other than her head, and she had a piece of tape over, not over her mouth, but the flap, the finding is, over her mouth. Now, given the extreme nature of the restraint and the child's reaction to that, which I would think would be anybody's reaction to that, trying to escape from being so completely immobilized and unable to take care of yourself, fend for yourself, not really understand what's going on here, how that doesn't rise to a risk of emotional harm or emotional harm itself. What have been the alternatives? I mean, she concedes that it's unorthodox and obviously not a recommended procedure for parents to employ, but if you have a child who's acting out, is doing these things, has a history of opening car doors, would jump out of the vehicle, and if she doesn't restrain, she jumps out of the vehicle, I think we'd all agree that parents would certainly be subject to a great deal of criticism. So what was she supposed to do to be able to safely transport the child to the hospital? First of all, there's no, there's not really, there's not an emergency here that, I mean, this child had a history of acting extreme, you know, extreme behavior. Well, the emergency was she was being transported to the hospital. But how was that? But that wasn't the emergency to begin with. The genesis of this is I'm going to take the other children to their lessons, you need to come in the van, and she does not, and she won't get in the van. You know, now you're, it's all going to go. So she's left with a choice of either leaving the child like this, unsupervised, or restraining him. Or you just, or as what happened, you don't go. How do you distinguish this case from MWOP? MWOP, you know, in MWOP, the children, there was a, it was a very large enclosure, and I think that that, you know, the measure of the restriction here, which is complete immobilization, does matter. There they had, it was a large enclosure. I think it was larger than their bedroom. They were to run and play in it. The child, one of the children at one point asked to be put in it while the mother was preparing dinner so she couldn't watch him. So you don't have, and they have toys in there to play. There's no indication that the children really objected to this in some kind of strong way as here where you have a child fighting to escape this. You know, there's an escalation that goes on here because this goes on over a period of time. Twenty-five minutes. Right, but first at home, and because it takes a little while to. . . So let me ask you this. Your argument is obviously that her measures were extreme and inappropriate, correct? Yes, they were extreme. And the Korkuna case, cited by the plaintiff, says that inappropriate behavior alone does not necessarily amount to abuse. You have to have a finding, and there was no finding of abuse here, correct? There's no specific finding of abuse. Which is required by the act, correct? That there needs to be a finding of abuse? Yes. I would not just, I would not argue with that. You're saying it's inherent in the record that we should make that finding? No, I don't think it's. . . Well, I think it's in the record, but I think that if you think that there needs to be another finding, you know, the agency is charged with making findings. But the, I mean, I don't say it's set out, but the decision that then became the director's decision is based on, in the conclusion, based on the facts and applying the law. And I don't think there's any reason to believe that the director does, that they don't know what that means when they're saying we're applying the law, and the law is applying this to what the definitions are and the requirements under the Abuse and Neglect Reporting Act. In your brief, page 24 of your brief, you argue that the N.C.'s history of her sensory disabilities, et cetera, all led to the possibility, at least you say, that even though there may not have been physical injury, there was at least emotional and mental injury, correct? Yes. But here, that child is back in the home, correct? Yes, she is. And was by the time of the hearing, so at least with respect to any lasting mental injury or emotional injury, that's no longer in existence. As far as I know. So it was a short duration. It would seem that it's been, things are being taken care of. But I don't know, I mean, how long does the duration of it have to be? It's, you know, if that would be the same with physical injury or any kind of emotional abuse, how long does it have to be? It has to be decided on its own facts. They do have to be decided on their own facts. And so, I'm sorry, I don't mean to interrupt. Well, my question is this. The confinement itself, even if we were to find, as ALJ did, that it was unreasonable, these were unreasonable steps, there should have been other measures taken. What were those other steps that the plaintiff could have taken? Well, first of all, there's, as it turned out, where they didn't go to the lessons, you know, there's the things that had been done in the past, you know, will hold you and wait until you calm down because there is a, I mean, there is a limit as to anybody. All the other children in the home have to suffer or miss appointments or miss doctor's appointments, miss school, miss whatever it is, dance lessons, counseling because of NC. There's accommodation. And that's the situation the mother's put in. I agree with that, but that's not the child's choice. There is a new circumstance here. There's a new dynamic in this family, and it needs to be worked out. What is the best way to work that out? But aren't we losing sight of something important here? This isn't a case where she put the, you know, she was just driving around doing a bunch of errands. Is it disputed that she was driving to the hospital and that's how this got uncovered? She, in fact, went, took the child to a hospital, correct? That's correct. So wasn't her goal then to try and seek assistance for the child? That's everything in the record is that. And I think that's a distinguishing fact from some of these other cases where the child was being restrained for the sake of being restrained. That's not what happened here. No, it isn't. But there's still, because now we're, I mean, this is, you know, but is it reasonable to do this this way when there's no, when she's at the hospital? I mean, it's not as if she had some physical ailment that needed to be addressed at the emergency right away now. And there's this escalation that goes on as, you know, this whole incident occurs from not wanting to get in the van. So let me ask you specifically. Something happens, the episode occurs, you're in the van, and then realize for the best interest of the child and the child's safety and the safety of the other children, you need to take the child to the hospital. And you have a child who has a history of opening doors. Right. Yes, Your Honor. What does she do? Call, call an ambulance, call the police. And the ambulance is going to restrain her? In a way that it would train professionals, the way that it is. It wouldn't have to restrain somebody who's on the phone. Who in that situation. That's what those services are for. That's why those services are provided, because there's going to be an array of different situations and emergencies that come up. And so you have, you know, you're trained, you're first responders type of people who know how to deal with those situations. In making the decision as to whether or not to expunge the report, should the ALJ judge have considered the plaintiff's history as a good mother, together with her education, her commitment to children, her concern for the welfare of children generally, in particular her own children, should he have taken that or should she have taken that into consideration? I think totality of the circumstances, you take everything into consideration. But as I was suggesting earlier, now there's a new dynamic here, and simply because there hasn't been a problem before. When a problem then arises, and it's a difficult job. It's a difficult job. And this is a difficult case because you have the circumstances are not so cut and dry. You don't have these horrendous situations that they're often faced with. So you're making this determination, this meets a standard. This is a very extreme way of restraining anybody, adult or child, you know, child or adult. But you don't, but you recognize, too, that this family, there is no history. So, but now you do have this new dynamic. And this happened fairly quickly after this child was introduced into the family. So how do you ensure that this isn't something that is an escalating situation? So you kind of, once you believe that the, once it seems that the evidence shows that this is an unreasonable restriction, what do you do with that? Because you have to, the point is to protect the children. So there's a different, there's a difficult decision to be made. And that's, you know, that's why I think, you know, the standard review here is clearly erroneous because these are difficult decisions and it's the agency that, you know, makes these decisions on a day-to-day basis. And if you don't make the decision, what happens if you, I mean, if you don't make the finding or, you know, what happens if you're wrong? Yeah, but this is a slightly different context. I see, and there should be heightened concern. Obviously, we can all agree when children are involved. But on a different level here, we're not talking about the initial report, the initial indication. We're talking about what are the mechanics in the law regarding the request for expungement and what are the findings that have to be made. So I don't think that would be a deterrent to the department doing what they have to do. You're asking us to determine that the finding of abuse, if it is required, it's in here, that the evidence is there. That these facts meet the law. Right, so you're not asking us to remand it because of the failure to make that finding by the ALJ, correct? No, I wouldn't suggest that that, I wouldn't say that that does need to be done, but I think that because the facts here meet the law, it's applying these facts to this law. And as the ALJ's decision, which was then adopted by the director and becomes his decision, concludes these facts applying the law, this is the, you know, by components of the evidence, it's found that the, that it was sustained. And so I don't think that it needs to be remanded. I don't think it should. But I think the facts do, you know, if you apply the law, as the director said, it was done. Then you reach a decision, and because it is clearly erroneous, unless you can say that, you know, a definite, you know, a mistake was made, a definite and firm conviction that a mistake was made here, then really it should be upheld. All right, thank you. Your time is up. Thank you. Thank you for the argument. Counsel may respond if you'd like. We respectfully disagree that the finding of abuse is inherent in the administrative law judge and by extension the director's decision. If, however, it is inherent in the decision that there was a finding of abuse, counsel's conclusions in her brief of what that abuse is, that being emotional abuse, are not supported anywhere in the record. There was no evidence offered, introduced in any way, shape, or form to suggest that there was emotional abuse. The only thing that could perhaps be stretched to suggest that there was evidence of emotional harm was the testimony that the child was crying upon arrival at the hospital. The child was involved in a horribly violent outburst for the duration of the incident, and I would submit that a crying child does not amount to abuse that is defined in the statute as injury or likely injury causing death, disfigurement, impairment of physical or emotional health, or loss or impairment of bodily functions. This is a high standard. This is not the child was upset. The department seems to put forth the position that hindsight is a proper inquiry, that there were alternative measures available to appellant, somehow substantiates the finding of abuse or the indicated finding. We respectfully disagree with this as well. The case law specifically provides that hindsight is not the proper inquiry. As Your Honor noted, in Karunka, the court mentions inappropriate behavior is not equivalent to abuse. Even if this were not the right decision, it wasn't an unreasonable decision, given the totality of the circumstances. Finally, counsel's distinction of walk, the walk addressed a large enclosure, whereas this is a binding to a chair, I don't believe in any way makes that case less analogous to this case. Walk did not involve two foster children who were involved in a violent outburst and a threat to themselves. It was the confining of those children because of certain of their past behaviors so that the foster parents could attend to certain chores at home. The factual circumstances are distinct in that way, but that case is on all fours, I would submit, with this case, with respect to the court's finding that a finding of abuse was necessary. Not only was there no abuse in that case, the court said the confinement was not unreasonable under the circumstances, correct? Correct. That there was a reasonableness inquiry necessary and that that was not, given the totality of the circumstances, unreasonable. I would submit that, in this case, the same is true. Given the totality of the circumstances, given the violent outburst, it was not an unreasonable restriction, an unorthodox one, but not an unreasonable one. For these reasons, we ask that you reverse the director's decision. Thank you very much. I thank both counsel for the quality of your arguments here this morning. The matter will, of course, be taken under advisement, a written decisional issue in due course. We now stand adjourned for the day subject to call. Thank you.